**Johnnie B. BLACKSHIRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44015.**

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

Thomas A. Neely, Vernon, for appellant.

William Neal, Vernon, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of burglary. The jury returned a verdict of guilty and the court assessed punishment at ten years.

This is a circumstantial evidence case [1] and the sufficiency of evidence is challenged as the sole ground of error.

C. E. Lawson testified that he was the owner of a service station in Lockett, a small town in Wilbarger County, west of Vernon; that on the night of July 25 or early morning of July 26, 1969, his station was burglarized. Thirty-six or thirty-seven new tires were taken. He did not give anyone permission to break in and take the tires. On Friday afternoon, July 25th, the appellant came into the station and stood around and sat where he could easily have seen the tires.

Lawson further stated that when he opened the station on July 26th, he observed a window broken and some iron bars pried off. The back door was ajar and it appeared to him that the burglar exited through that door. There was a cyclone fence around the back of the station and footprints were visible in the mud. Also the weeds were tromped down leaving a path from the station to the fence.

On the night of the burglary it rained. The next morning investigating officers observed both footprints and truck tire prints in the mud around the rear of the station. The said tracks of dual wheels led up to the cyclone fence and the two right rear tires were slick. Plaster casts were made of the truck prints and footprints and these casts were admitted into evidence.

Dan Richardson testified that he operated a cafe in Vernon. As he started to close the cafe around 12:00 o'clock on July 25, 1969, he looked out and saw that his car was gone. He called the police and reported it stolen. After being informed by the police to obtain the "tag number," he caught a ride home, then returned to the cafe in his pickup; as he picked up the telephone to call the police he saw Richard

1. See also Blackshire v. State, Tex.Cr.App., 464 S.W.2d 108.

Owens drive up in his car; that after a conversation with Owens, they went to Jet's Cafe. There he saw appellant and confronted him about taking the car without permission.

Henry Lee testified that he owned a green '48 Chevrolet truck that he used to haul junk with; that the truck had side boards but no tail gate and that it had dual wheels, "two of them on the back was kind of slick." He stated that he had not used the truck for about a week. The last time he used it he ran out of gas, put $1.00 worth in it and drove back to his house in Vernon. At approximately 2:00 A.M. on July 26th, Dan Richardson came to his house and said he saw the truck in town with some tires on it. He "looked out and saw" the truck but it wasn't parked in the same place as he had left it. He reported this to the "law enforcement people".

Richard Owens, Jr., testified that he was outside of Dan Richardson's Cafe around 12:00 or 1:00 o'clock, on the night in question, when the appellant walked up and asked him if Dan was inside; that appellant went inside and "came back out and asked me to come go with him, that he had run out of gas and wanted me to come with him and drive Dan's car back." He got in Dan's car with the appellant and they "went to the Fina filling station, and he put $1.00 worth of gas in Dan's car and $1.00 worth in a gas can and put up $1.00 deposit." Then they went out on Sand Road and "come up behind the truck and parked in back of the truck." He recognized the truck as belonging to Henry Lee and he could see some tires in it. He stated that appellant put the gas into the truck and told him to return Dan's car and get the deposit. He testified that the next day he saw the appellant, and then he was asked:

"Q. Did he (appellant) ask you about talking with the officers?

"A. Yes.

"Q. Did he ask you if you told them anything about the tires?

"A. Yes.

"Q. What did he say about that?

"A. He asked me what were they asking me about the tires. I said 'They asked me about Dan's car and the tires', and I said 'I told them about the tires.' He said 'What did you tell them?' I said 'That I seen some tires up on the truck.' And he said 'Well, that is all right.' "

Another witness was standing in front of Richardson's Cafe with Owens on the night in question. He saw the appellant walk up, go into the cafe, come back out and get into Richardson's car and drive away with Owens.

A Texas Highway Patrolman saw the appellant south of Vernon on Sand Road walking toward town at approximately 11:00 P.M., on July 25, 1969.

Eugene Young testified that he was employed at the B. F. Goodrich Store in Vernon. On Saturday, July 26, 1969, he saw appellant and "he propositioned to me about some tires, which he seen me handle tires which I bought as I told you before, and he told me he buyed them, and I told him I would take four, and I did.

"Q. What did he offer to sell them to you for?

"A. First, they were $15.00.

"Q. What did you offer him?

"A. Well, I just had $10.00.

"Q. Is that what you paid him?

"A. That is right.

"Q. $10.00 a piece for four tires?

"A. That is right.

"Q. Were these brand new tires?

"A. That is right.

\* \* \* \* \* \*

"Q. All right. Where did you go, you and Johnnie B. go to get these tires?

"A. Northeast corner of the field below the packing house down there.

"Q. How did you get out there?

"A. Just went down the road there.

"Q. Were you in a car?

"A. That is right.

"Q. Whose car?

"A. Mine.

"Q. Who was with you?

"A. He and I.

"Q. How did you know where to go?

"A. He directed me.

"Q. Johnnie B. Blackshire directed you?

"A. Yes, sir.

"Q. And where was it he directed you to?

"A. To some weeds there at the northeast corner of the alfalfa field there.

"Q. Up there by Wrights Packing Company?

"A. Yes."

On the basis of information he had obtained from Owens, Richardson and Lee, Deputy Sheriff Clinton Russell testified that he obtained a warrant for the arrest of appellant about two days after the burglary, and he was arrested at that time. At the time of his arrest, officers found a pair of boots identified by appellant as his own boots, in the yard outside his apartment. These boots were admitted into evidence. And these boots matched the plaster cast of the boot tracks made by the burglar at Lawson's station. Deputy Russell also testified that he examined and took pictures of Henry Lee's truck, and that the arrangement of the tires, the kind of tires, the wear on the treads, etc., matched those truck prints he observed in the fresh mud the morning after the burglary at the rear of Lawson's station. When he examined Henry Lee's truck the day after the burglary there were strips of brown tire-wrapping paper in the bed of the truck with the same markings and the same type as the tire-wrapping paper that was on Lawson's Atlas tires which were stolen.

Texas Ranger Byron Currin, who assisted in the investigation, and Deputy Russell both further testified that after giving the appellant the Miranda warnings following his arrest they questioned him about this burglary and the theft of the new tires. Although appellant did not make a written statement, he did lead Ranger Currin and Deputy Russell to the weed patch in north Vernon where, the day before, he had taken Eugene Young when he sold him the four new Atlas tires. There the officers found 19 new automobile tires and two new truck tires, all matching the description of the tires taken in the burglary.

We conclude that the threads of evidence are sufficiently woven together to bind appellant to the crime.

The judgment is affirmed.